## IN THE CIRCUIT COURT
## FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| KEITH FORD<br>7953 Trailview Crossing<br>Glen Burnie, MD 21060<br>*Individually and on Behalf of All Others*<br>*Similarly Situated*<br>                Plaintiff,<br><br>        v.<br><br>UHG I, LLC, t/a United Holdings Group<br>6400 Sheridan Drive, Ste 138,<br>Williamsville, NY 14221<br>Serve On:<br> Maryland Department of Assessments and<br> Taxation<br> 301 W. Preston St. Baltimore, MD 21201<br><br>and<br><br>UNITED HOLDINGS GROUP, LLC<br>6400 Sheridan Drive, Ste 138,<br>Williamsville, NY 14221<br>Serve On:<br> Jacob Adamo,<br> 6400 Sheridan Drive, Ste 138,<br> Williamsville, NY 14221<br><br>and<br><br>HARRISLOFTUS, PLLC<br>7900 Sudley Road, Suite 608<br>Manassas, VA 20109<br>Serve On:<br> Registered Agents, Inc.<br> 5000 Thayer Center, Ste. C<br> Oakland, MD 21550<br><br>                Defendants. | Case No.:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

EXHIBIT 1

## COMPLAINT

Plaintiff, KEITH FORD files this individual and class action complaint through his undersigned counsel.  UHG has filed at least 46 cases as assignee of WebBank, and more than 400 cases in the past year, in Maryland.

Plaintiff sues United Holdings Group and its subsidiary UHG I, LLC (collectively "UHG") for (a) hiring an unknown, unscrupulous debt collector which harassed Plaintiff by calling his employer and extended family and (b) filing a collection lawsuit against Plaintiff without a right to do so, which also included misleading information. Plaintiff also sues HarrisLoftus, UHG's collection attorneys for sending a misleading collection letter claiming that UHG owned the debt before even UHG alleges it had taken assignment of the debt. Plaintiff Organizes his claims as follows (a) Counts I-III are individual claims against UHG for the illegal collection activity of the unknown third-party collector which called Mr. Ford's employer and family members; (b) Counts IV-VI are class claims against UHG related to the collection action it filed against Plaintiff and (c) Count VII is a class claim against UHG's attorneys HarrisLoftus in relation to its misleading pre-litigation collection letter.

1. UHG is a collection of debt-buying and debt-collecting entities recently sued by the Consumer Financial Protection Bureau for its illegal collection practices.

2. This case involves both the type of misconduct alleged by the CFPB and new illegal conduct.

3. UHG, through an unknown third-party collector acting as agent for UHG, attempted to collect a debt from Mr. Ford by repeatedly calling his extended family and calling Mr. Ford after he had told them to stop.

EXHIBIT 1

4. UHG also filed a collection action in the District Court of Maryland using a false and misleading affidavit, misrepresenting the chain of title to the debt.

5. HarrisLoftus, PLLC ("HarrisLoftus") is a law firm representing UHG. HarrisLoftus wrote to Mr. Ford threatening suit on behalf of UHG, but, confusingly, did so before the date UHG subsequently claimed to have taken assignment of the debt.

## PARTIES

6. Plaintiff is a resident of Anne Arundel County, Maryland.

7. Defendant United Holdings Group, LLC is a Delaware limited-liability company. Its principal office is 6400 Sheridan Drive, Ste 138, Williamsville, New York. It has no resident agent in Maryland.

8. Defendant UHG I, LLC, is a Delaware limited-liability company. Its principal office is 6400 Sheridan Drive, Ste 138, Williamsville, New York. Its registered agent is the Department of Assessments and Taxation, 301 W. Preston St. Baltimore, MD 21201.

9. On information and belief, UHG I, LLC is a mere subsidiary or alter-ego of United Holdings Group, LLC, sharing the same office and staff a United Holdings Group and trading under its name.

10. Defendant HarrisLoftus, PLLC is a Virginia law firm, with its principal office in Manassas, Virginia.

## JURISDICTION

11. This court has jurisdiction over the Defendants under Md. Code Ann., Cts. & Jud. Proc. § 6-103 because Defendants transact business in this state Plaintiff's claims arise from tortious injuries sustained in this state, caused by Defendants' tortious actions in this state.

EXHIBIT 1

12. Venue is proper in Anne Arundel County under Md. Code Ann., Cts. & Jud. Proc. § 6-201 because Defendants regularly carry-on business in Anne Arundel County.

## FACTS
### UHG's History Of Illegal Collection Practices

13. The principal purpose of UHG's business is collecting on debt.

14. The majority of UHG's income is from debt collection.

15. UHG bought portfolios of defaulted consumer debt worth millions of dollars for a small fraction of their outstanding balance and then placed the portfolios with or sold them to other Debt Collectors. Some of those Debt Collectors in turn placed or sold the portfolios to downstream Debt Collectors.

16. The CFPB sued UHG and related entities and individuals in January 2022 for violations of the law including that UHG knowingly placed debts with debt collectors who engaged in illegal collection practices, and failed to stop its collectors from continuing such practices, despite substantial contractual control over them.

17. The CFPB's complaint identified specific example of collectors acting for UHG making illegal threats, including threats of arrest, criminal charges, harassing contact with third parties such as consumers' employers and minor children.

18. UHG's practices were substantially the same as those of various predecessor companies, which also shared its staff and offices, including JTM Capital Management, LLC ("JTM").

19. JTM placed the alleged debts of Maryland individuals with unlicensed debt collectors on at least 4 occasions.

20. JTM's unlicensed collectors engaged in illegal activities including calling a

EXHIBIT 1

Maryland consumer's employer, in *Jackson v. JTM Capital Management, LLC* Civil Action No. TDC-19-1009 (D. Md.).

21. UHG and its officers have known for years that its third-party collectors were breaking the law.

22. UHG and its affiliates have received hundreds of complaints of this type of behavior since 2015. UHG and its affiliates knew or had reason to believe that these complaints were substantially true because they received recordings of calls with consumers which contained illegal threats.

23. Nevertheless, UHG continued placing debts for collection with debt collectors who engaged in illegal activity, and took no meaningful action to prevent such illegal activity.

24. In *Jackson v. JTM Capital Management, LLC*, JTM did not terminate the unlicensed collectors for illegal activity towards the plaintiff in that case, but rather, for reasons of "production".

## Illegal Collection Activity Directed At Ford

25. In late August or early September 2021, Mr. Ford began receiving frequent rude debt collection calls concerning a LendingClub loan from a debt collecting business whose name he cannot now recall ("Unknown Collector")

26. The Unknown Collector called Mr. Ford's employer several times and revealed it was attempting to collect a debt from Mr. Ford.

27. The Unknown Collector called every working day, sometimes twice, despite Mr. Ford telling them to leave him alone.

28. The Unknown Collector repeatedly called Mr. Ford's extended family including his sisters, brother and father, on the pretext of locating Mr. Ford, despite having

EXHIBIT 1

been in contact with Mr. Ford.

29. This illegal collection activity caused Mr. Ford emotional distress in the form of embarrassment, anxiety, a racing pulse, lightheadedness, difficulty concentrating, anger, marital discord, sleeplessness, loss of weight, nausea, tightness in the chest and guilt.

30. On information and belief, this unknown debt collector was acting for UHG. This information and belief is based on UHG's history of hiring third party collectors which then violate debt collection laws and on the facts that follow.

### UHG's Collection Lawsuit

31. On October 7, 2021, HarrisLoftus, PLLC sent Mr. Ford a debt collection letter titled "RE: Uhg I Llc Assignee of WebBank" and stated that the "Original Creditor" was "WebBank." ("Collection Letter").

32. The Collection Letter stated that "This office is legal counsel for the above-named creditor and your account has been referred to us for collection and the possible filing of a lawsuit in court."

33. On November 11, 2021, UHG, represented by HarrisLoftus, filed a Consumer Debt Collection Action against Mr. Ford in the District Court of Maryland for Anne Arundel County.

34. The suit was filed in the name of "UHG I, LLC, t/a assignee of WebBank"

35. The suit identified UHG I, LLC as also trading under the name "United Holding Group".

36. The debt it sought to collect was the same LendingClub loan that the unknown collector had tried to collect from Mr. Ford.

37. Because UHG claimed it had purchased the alleged debt, if it elected to file a

EXHIBIT 1

collection lawsuit, it was required to use a special form of complaint – an "assigned consumer debt" complaint and to answer certain questions in the form, under Maryland Rule 3-306(d).

38. The form requires the completion of a checklist under oath.

39. The checklist requires a "Chronological list of names of all prior owners of the debt and date of each transfer (begin with original)."

40. UHG listed only "LendingClub Corporation: 10/23/2020" making it appear that LendingClub was the original creditor, and that the only transfer of title occurred on 10/23/2020 from LendingClub to UHG.

41. This statement was false, and was also contradicted by other parts of the form: UHG filed the case "t/a assignee of *WebBank*" (emphasis added) and listed WebBank under "Name of Original Creditor".

42. This statement also contradicted HarrisLoftus' Collection Letter to Mr. Ford, which identified WebBank as the original creditor.

43. The chain of title also appears to contradict the statement in the Collection Letter that UHG was an Assignee of WebBank, since the letter was sent before WebBank is alleged to have transferred title to LendingClub, let alone to UHG.

44. UHG's affiant, Kaelyn Kowalik, signed the checklist under the statement "I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of this document are true."

45. The checklist plainly contained false information because it omitted the first alleged transfer of title from the mandatory chronological list. Since this defect would have been apparent to anyone reviewing the checklist and its attachments, the affiant's claim that the checklist was completed "upon personal knowledge"

EXHIBIT 1

was false.

46. The attachments to the complaint included a "Certificate of Loan Sale" dated 10/28/2020 by WebBank, claiming that certain loans had been transferred from WebBank to LendingClub, but did not specify Mr. Ford's loan or any other loans which allegedly had been transferred, nor the actual date of any alleged transfer.

47. By filing the collection action, UHG represented to Mr. Ford that it was entitled to file the collection action.

48. Under Md. Code Ann., Com. L. § 5-1203(a), UHG was prohibited from filing any such collection action unless it possessed:

> A certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner. . . with each bill of sale or other document that transferred ownership containing specific reference to the debt.

49. On information and belief, UHG did not possess a certified or otherwise properly authenticated "bill of sale or other document that transferred ownership containing specific reference to the debt" for the first transfer in its claimed chain of title: from WebBank to LendingClub. It possessed only a generic statement that loans had been transferred, at some point, with not specific reference to Mr. Ford's or anyone else's alleged debt. This is based on UHG's failure to attach any such document to the complaint.

50. Because UHG did not possess a certified or otherwise properly authenticated "bill of sale or other document that transferred ownership containing specific reference to the debt" it was not permitted to file a collection action against Mr. Ford.

51. Mr. Ford did not know that UHG's filing of the collection action was illegal, but

EXHIBIT 1

relied on UHG and their lawyers' implicit representation to him and the court
that the lawsuit was legitimate.

52. In reliance on the Defendants' implicit representations that the lawsuit was valid,
Mr. Ford paid money out of pocket to a third-party to help him file a defense to
the collection action.

53. UHG has filed at least 46 cases as assignee of WebBank and more than 400 cases
in the past year, in Maryland.

54.

## Class Allegations

55.     The Lawsuit Class is against UHG, and is defined as:

> All individuals against whom UHG filed a collection action in
> Maryland that either (a) included an Assigned Consumer Debt
> Checklist that failed to list all assignments of the debt or (b)
> was filed without possession of a certified or properly
> authenticated bill of sale or other document that transferred
> ownership of the debt, containing a specific reference to the
> individual's alleged debt, for each alleged transfer of title
> between the original creditor and UHG.

56.     The Letter Class is against HarrisLoftus, and is defined as:

> All individuals to whom HarrisLoftus sent a collection letter
> in the year immediately preceding the filing of the complaint,
> stating that UHG was an assignee of a debt before any
> assignment of the subject debt to UHG

57.     The following people are excluded from the classes:

   a. employees or independent contractors of the Defendants;

   b. relatives of employees and independent contractors of the Defendants;

   c. employees of the Court where this action is pending.

58.     *Ascertainability.*   The Class Members are readily identifiable from the
information and records in the possession or control Defendants or their affiliated entities

EXHIBIT 1

and agents, and the records of the District Court of Maryland.

59.     The only individual questions concern the identification of Class Members and the damages they sustained. This information can be determined by a ministerial examination of public records in various court houses or from the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party opponent.

60.     *Numerosity*. Rule 2-231(b)(1). The Members of the Class are sufficiently numerous that individual joinder of all members is impractical. UHG has filed at least 46 cases as assignee of WebBank in the past year, in Maryland. UHG has filed more than 400 cases in the past year, in Maryland. HarrisLoftus has filed at least 292 collection actions in Maryland in the past year, including the 46 "assignee of WebBank" actions on behalf of UHG.

61.     *Commonality*. Rule 2-231(b)(2). There are questions of law and fact common to the Class Members which predominate over any questions affecting only individual members and, in fact, the wrongs alleged against Defendants by the Class Members and the remedies sought by Plaintiff and the Class Members against Defendant are identical. The common issues of Fact and Law include but are not limited to:

      a. The Lawsuit Class:

            i. Whether UHG violated the MCDCA by filing collection actions in violation of Md. Code Ann., Com. L. § 5-1203(a).

           ii. Whether UHG violated the FDCPA by filing actions in violation of state law or by using false statements in its assigned consumer debt checklists.

EXHIBIT 1

      iii.  Whether UHG falsely filed assigned consumer debt checklists claiming personal knowledge where the affiant in fact lacked personal knowledge.

      iv.  Whether UHG is entitled to collect on debts using filed in violation of Md. Code Ann., Com. L. § 5-1203(a).

      v.  Whether and how much UHG should pay in statutory additional damages under 15 U.S.C. § 1692k

b.  The Letter Class:

      i.  Whether HarrisLoftus violated the FDCPA by sending collection letters identifying as assignee of the subject debt an entity that had not taken assignment when the letter was sent.

      ii.  Whether and how much HarrisLoftus should pay in statutory additional damages under 15 U.S.C. § 1692k.

62.  *Typicality*. Rule 2-231(b)(3).  Plaintiff's legal and equitable claims are typical and the same or identical for each Class Member they represent and will be based on the same legal and factual theories.   Defendants' defenses would be typical and the same or identical for each Class Member and will be based on the same legal and factual theories.

63.  *Adequacy*. Rule 2-231(b)(4). Named Plaintiff will fairly and adequately protect the interests of all Class Members who they represent in the prosecution of this action. Named Plaintiff is similarly situated with, and has suffered similar injuries to the Class Members Named Plaintiff seek to represent.

64.  To that end, the Named Plaintiff has retained counsel experienced in handling class action suits involving unfair or deceptive business practices that harm

EXHIBIT 1

consumers, and the specific causes of action being asserted in this lawsuit.

65.     . Certification of a Class under Rule 2-231(c)(3) is appropriate as to the Class Members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of the Class Members' claims, and economies of time, effort and expenses will be fostered, and uniformity of decisions will be insured.

66.     The Class Members have suffered damages, losses, and harm similar those sustained by the Plaintiff and described above.

67.     The amount in controversy for each of the counts listed below is in excess of $75,000, and is subject to further discovery as to the size of the class.

## INDIVIDUAL CLAIMS AGAINST UHG
### COUNT I –Fair Debt Collection Practices Act 15 U.S.C §§ 1692b & 1692c– Individual – UHG Only

68.     Plaintiff incorporates the allegations in the foregoing paragraphs.

69.     At all material times herein, Plaintiff's debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5) because it was an "alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family or household purposes."

70.     At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

71.     At all material times herein, Defendants were each a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6), because they were each a "business the principal purpose of which is the collection of any debts".

EXHIBIT 1

72.   At all material times the Unknown Debt Collector was a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6) because it attempted to collect a debt alleged to be due to Defendants.

73.   The Unknown Debt Collector was an agent of Defendants, because, on information and belief, it entered into contracts with Defendants to collect debts, which gave Defendants substantial control over its collection activities.

74.   Defendants violated 15 U.S.C. § 1692c(b) by contacting a person other than Plaintiff or Plaintiff's attorney concerning the debt, other than as provided by 15 U.S.C. § 1692b. The contact was not in accordance with § 1692b because it involved contacting individuals more than once and because they already knew how to contact Plaintiff and that Plaintiff did not wish to be contacted. The contact also involved revealing that the collector was attempting to collect a debt to his employer.

75.   Defendants violated 15 U.S.C. § 1692c(c) by contacting Plaintiff despite being told not to.

76.   Plaintiff was damaged as aforesaid.

WHEREFORE, Plaintiff requests the following relief:

   A.  Damages in excess of $75,000.00 to be assessed by a jury;

   B.  Additional damages of $1,000.00;

   C.  Costs;

   D.  Reasonable Attorneys Fees;

   E.  Such other and further relief as Plaintiff's cause may require.

### COUNT II –Maryland Consumer Debt Collection Act, Md. Code Ann. ("MCDCA"), Com. L. § 14-201 et seq. (Individual)(UHG Only)

77.   Plaintiff repeats the foregoing allegations as though fully set forth here.

EXHIBIT 1

78.    Defendant is a "collector" within the meaning of Md. Code Ann., Com. L. § 14-201(b) because it was attempting to collect an alleged debt arising from a consumer transaction.

79.    Defendant violated Md. Code Ann., Com. L. § 14-202(11) by engaging in conduct that violated the Fair Debt Collection Practices Act, as set out in Count I.

80.    Plaintiff was damaged as aforesaid.

WHEREFORE, Plaintiff requests the following relief:

A.  Damages in excess of $75,000.00 to be assessed by a jury;

B.  Costs;

C.  Such other and further relief as Plaintiff's cause may require.

### COUNT III – Maryland Consumer Protection Act – Individual – UHG Only

81.    Plaintiff repeats the foregoing allegations as though fully set forth here.

82.    The Plaintiff is a "consumer" as defined by § 13-101(c)(1) of the MCPA, and the alleged debt on the second mortgage relates to a "consumer debt" as defined by § 13-101(d)(1).

83.    Defendant is a "merchant" as defined by § 13-101(g)(1) of the MCPA.

84.    Each of the parties to this action is a "person" as defined by § 13-101(h) of the MCPA.

85.    In enacting the Consumer Protection Act, the Legislature made the following Legislative Findings:

> (a)(1) The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with

EXHIBIT 1

sales of merchandise, real property, and services and the extension of credit.

(2) The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.

\*       \*       \*

(b)(2) The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer.

(3) The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

Md. Code Ann., Com. Law § 13-102.

86.     In enacting the MCPA, the Legislature expressed its explicit intent as follows: "[t]his title is intended to provide minimum standards for the protection of consumers in the State." Md. Code Ann., Com. Law § 13-103(a).[1]

87.     The Legislature also said that the MCPA "shall be construed and applied liberally to promote its purpose." Md. Code Ann., Com. Law § 13-105. As one court observed, "[t]he Act is intended to be liberally construed in order to achieve its consumer protection objectives." *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758,

---

[1] "The 1986 amendment of the Act to include a private cause of action was designed 'to improve the enforcement' of the Act for the benefit of those consumers. *See* Report of Senate Judicial Proceedings Committee concerning Senate Bill 551 (March 7, 1986)." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 167, 59 A.3d 1016, 1029 (2013).

EXHIBIT 1

2013 WL 247549, at *10 (D. Md. Jan. 22, 2013).

88.    Md. Code Ann., Com. L. § 13-303 states that "a person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in...(5)   The collection of consumer debts."

89.    Md. Code Ann., Com. L. § 13-303(1) defines "unfair, abusive, or deceptive trade practices" to include any "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."

90. Md. Code Ann., Com. L. § 13-301(3) defines "unfair, abusive, or deceptive trade practices" to include any "Failure to state a material fact if the failure deceives or tends to deceive."

91.    Md. Code Ann., Com. L. § 13-301(14)(iii) defines "unfair, abusive, or deceptive trade practices" to include any violation of the Maryland Consumer Debt Collection Act.

92.    Defendant violated Md. Code Ann., Com. L. § 13-301(1) by using false or misleading oral or written statements to collect a debt.

93.    Defendant violated Md. Code Ann., Com. L. § 13-301 by using an unfair practice to collect a debt.

94.    A practice is unfair under the MCPA if it results in (a) a substantial injury (b) not outweighed by any countervailing benefit of the practice and (c) not reasonably avoidable by the consumer. *Legg v. Casstruccio,* 100 Md. App. 748 (1994)(adopting FTC standards for unfairness). That the practice is a violation of public policy provides additional evidence of the degree of consumer injury. *Id.* at 769.

95.    Defendants' practice of hiring and failing to supervise fly-by-night debt

EXHIBIT 1

collectors on contingency was an unfair practice. It caused substantial injury to Plaintiff in that intruded on his privacy and exposed him to professional embarrassment.

96.  Defendants' practice has no countervailing benefit to the public: the public does not benefit from poorly supervised collectors being set loose by Defendants.

97.  Plaintiff could not reasonably avoid this practice: he had no way to choose who Defendants chose to retain to collect money from him.

98.  Defendant violated Md. Code Ann., Com. L. § 13-301 by using an abusive practice to collect a debt.

99.  The Merriam-Webster dictionary defines "abuse" as "1. a corrupt practice or custom . . . 2. Improper or excessive use or treatment."

100.  Defendants' practice of hiring and failing to supervise fly-by-night debt collector is a corrupt practice or custom, used in an effort to allow Defendants to reap the financial benefit of illegal collection practices while avoiding liability for them.

101.  Plaintiff was damaged as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A.  An award of actual damages in excess of $75,000 to be assessed by the jury;

B.  An award of reasonable attorneys fees and costs;

C.  Such other and further relief as Plaintiff's cause may require.

## CLAIMS FOR THE LAWSUIT CLASS AGAINST UHG
### COUNT IV –Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A), (5) & (10) – Lawsuit Class – UHG Only

102.  Plaintiff incorporates the allegations in the foregoing paragraphs.

103.  At all material times herein, Plaintiff's debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5) because it was an "alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family or household

EXHIBIT 1

purposes."

104.   At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

105.   At all material times herein, Defendants were each a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6), because they were each a "business the principal purpose of which is the collection of any debts".

106.   Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount or legal status of the allege debt.

107.   Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to attempt to collect a debt or obtain information concerning a consumer.

108.   Defendant violated 15 U.S.C. § 1692e(5) by threatening to take, or actually taking, action that not legally possible or not intended to be taken.

109.   Defendants' false representations were material because they were of a type that would be important to a consumer in deciding how to respond to Defendant's collection efforts. The ambiguity in Defendants' complaint as to the original creditor and the chain of title might cause a consumer to be confused about the origin of the debt, whether the debt was legitimate, and what Defendants would need to prove in court in order to prevail. The false representation that that assigned consumer debt checklist was "true on personal knowledge" could lead a consumer to think that the checklist had actually been reviewed when it had not. The implicit representation that Defendants had a right to file when they did not might lead a consumer to pay on the debt to avoid a judgment.

110.   Plaintiff and the class were damaged by Defendant's actions as aforesaid.

EXHIBIT 1

WHEREFORE, Plaintiff and the Class request the following relief:

    A.  Damages in excess of $75,000.00 to be assessed by a jury;

    B.  Additional damages of $1,000.00 per class member;

    C.  Costs;

    D.  Reasonable Attorneys Fees;

    E.  Such other and further relief as Plaintiff's cause may require.

### COUNT V – Maryland Consumer Debt Collection Act – Lawsuit Class – UHG Only

111.    Plaintiff repeats the foregoing allegations as though fully set forth here.

112.    Each Defendant is a "collector" within the meaning of Md. Code Ann., Com. L. § 14-201(b) because it was attempting to collect an alleged debt arising from a consumer transaction.

113.    Defendant violated Md. Code Ann., Com. L. § 14-202(8) by claiming, attempting or threatening to enforce a right with knowledge or reckless disregard that the right did not exist.

114.    Each Defendant violated Md. Code Ann., Com. L. § 14-202(11) by engaging in conduct that violated the Fair Debt Collection Practices Act, as set out in Count I.

115.    Plaintiff and the class were damaged as aforesaid.

**Wherefore,** Plaintiff and the Class ask for the following relief:

    A.  An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000, against all Defendants;

    B.  Such other and further relief the nature of the Plaintiff's cause may require.

EXHIBIT 1

## COUNT VI – Maryland Consumer Protection Act – Lawsuit Class – UHG Only

116.     Plaintiff repeats the foregoing allegations as though fully set forth here.

117.     The Plaintiff is a "consumer" as defined by § 13-101(c)(1) of the MCPA, and the alleged debt on the second mortgage relates to a "consumer debt" as defined by § 13-101(d)(1).

118.     Each Defendant is a "merchant" as defined by § 13-101(g)(1) of the MCPA.

119.     Each of the parties to this action is a "person" as defined by § 13-101(h) of the MCPA.

120.     Md. Code Ann., Com. L. § 13-303 states that "a person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in...(5)   The collection of consumer debts."

121.     Md. Code Ann., Com. L. § 13-303(1) defines "unfair, abusive, or deceptive trade practices" to include any "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."

122.      Md. Code Ann., Com. L. § 13-301(3) defines "unfair, abusive, or deceptive trade practices" to include any "Failure to state a material fact if the failure deceives or tends to deceive."

123.     Defendant violated Md. Code Ann., Com. L. § 13-301(14)(iii) by violating the MCDCA as aforesaid.

124.     Defendant violated Md. Code Ann., Com. L. § 13-301(1) by using false or misleading oral or written statements to collect a debt.

125.     Plaintiff was damaged as aforesaid.

EXHIBIT 1

**Wherefore,** Plaintiff and the Class ask for the following relief:

C.  An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000, against all Defendants;

D.  Such other and further relief the nature of the Plaintiff's cause may require.

E.  An award of reasonable attorneys' fees to Plaintiff.

### CLAIM FOR THE LETTER CLASS AGAINST HARRISLOFTUS
### COUNT VII – FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692e(10) & 1692g – Letter Class – HarrisLoftus Only

126.    Plaintiff incorporates the allegations in the foregoing paragraphs.

127.    At all material times herein, Plaintiff's debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5) because it was an "alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family or household purposes."

128.    At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

129.    At all material times herein, Defendant was a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6), because it "regularly . . . attempts to collect, directly or indirectly, debts . . . asserted to be owed or due another."

130.    Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to attempt to collect a debt or obtain information concerning a consumer.

131.    Defendant violated 15 U.S.C. § 1692g by failing to identify the owner of the debt in its initial communication. The Collection Letter incorrectly identified UHG as owner when, according to documents publicly filed by UHG, it had not then taken assignment.

EXHIBIT 1

132.     Defendant's false representations were material because they were of a type that would be important to a consumer in deciding how to respond to Defendant's collection efforts in particular in deciding whether the true owner of the debt was seeking payment and in determining whether and how much to offer to pay to satisfy the debt.

133.     Defendant thus violated Plaintiff and the Letter Class's statutory right to know the true owner of their debt.

WHEREFORE, Plaintiff requests the following relief:

    A.  Damages in excess of $75,000.00 to be assessed by a jury;

    B.  Additional damages of $1,000.00;

    C.  Costs;

    D.  Reasonable Attorneys Fees;

    E.  Such other and further relief as Plaintiff's cause may require.

 

Respectfully submitted,

Dated: February 21, 2022        KEITH FORD

By:  /s/ Emanwel J. Turnbull
    Emanwel J. Turnbull
    CPF# 1606210269
    THE HOLLAND LAW FIRM, P.C.
    914 Bay Ridge Rd, Ste 230
    Annapolis, MD 21403
    Telephone: (410) 280-6133
    Facsimile: (410) 280-8650
    eturnbull@hollandlawfirm.com

    Peter A. Holland
    CPF# 9212160067
    THE HOLLAND LAW FIRM, P.C.
    914 Bay Ridge Rd. Ste 230

EXHIBIT 1

Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Counsel for Plaintiff*

EXHIBIT 1

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: February 21, 2022

By: _/s/ Emanwel J. Turnbull_____

Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

*Counsel for Plaintiff*

EXHIBIT 1