IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEITH FORD, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 22-cv-00840-LKG |
| | ) |
| v. | ) Dated:  February 23, 2023 |
| | ) |
| UHG I, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Defendants, UHG I, LLC ("UHG") and United Holdings Group, LLC ("UHGL"), have moved to compel arbitration and to either stay or dismiss this putative class action matter, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  ECF No. 25; *see also* ECF No. 26.  This motion is fully briefed.  ECF Nos. 26, 33 and 34.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court:  (1) **GRANTS** Defendants' motion to compel arbitration; and (2) **DISMISSES** the complaint.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

**A.     Factual Background**

In this putative class action, Plaintiff, Keith Ford, alleges that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann. Com. L. § 14-201 *et seq.* (the "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann. Com. L. § 13-101 *et seq.* (the

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and Defendants' motion to compel arbitration and memorandum in support thereof. ("Def. Mot.").

"MCPA"), by engaging in certain illegal debt-collection activities, including hiring a third-party debt-collector that placed excessive calls and harassed Plaintiff.  ECF No. 1-2.

Plaintiff is a resident of Anne Arundel County, Maryland.  ECF 1-2 at 3.

Defendant UHGL is a Delaware limited liability company and its principal place of business is located in New York.  *Id*. at 3.  Defendant UHG is also a Delaware limited liability company and its principal place of business is located in New York.  *Id*.  Defendants are in the business of debt-collection.  *Id*. at 4.

Plaintiff's Loan

On or about August 14, 2018, Plaintiff obtained a personal loan (the "Loan") in the amount of $15,000 *via* a website operated by LendingClub Corporation ("LendingClub"), an online marketplace that connects borrowers and investors.  ECF 26 at 1; ECF No. 26-2 at 2-14.  The Loan was issued by WebBank on August 23, 2018, and LendingClub serviced the loan.  ECF No. 26-1 at 2.

The Loan was subsequently transferred on multiple occasions.  First, WebBank transferred the Loan to LendingClub on or about August 17, 2018.  *Id*. at 3.  On or about August 27, 2018, LendingClub transferred a fraction of the Loan to an entity known as LC Trust I.  *Id*.  Thereafter, on or about October 23, 2020, LendingClub and LC Trust I transferred the Loan to UHG.  *Id*.

After UHG acquired the Loan, Plaintiff defaulted on the Loan.  ECF No. 1-2 at 6; ECF No. 33-1 at 2-17.  On November 9, 2021, UHG brought a debt-collection action against Plaintiff in the District Court of Maryland.  ECF No. 33-1 at 2-4.

Plaintiff alleges in his action that, in late August or September 2021, he began receiving frequent and rude debt-collection calls concerning the Loan.  ECF No. 26-1 at 2.

The Borrower Agreement

Relevant to the pending motion to compel, Plaintiff signed a borrower agreement (the "Borrower Agreement") with WebBank as part of his loan application.  ECF No. 26-2 at 3-14; ECF No. 26-2 at 4-14.  The Borrower Agreement contains, among other things, an arbitration provision.  ECF 26 at 2.

Specifically, paragraph 21 of the Borrower Agreement provides, in relevant part, that:

> Either party to this Agreement, or any *subsequent holder*, may, at its sole election require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 21 (the "Arbitration Provision") . . . As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you . . . on the one hand, and us and/or any subsequent holder . . . . on the other hand, relating to or arising out of this Agreement . . . . The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

ECF No. 26-2 at 7-14.

Paragraph 21(b) of the Borrower Agreement also contains an "opt out" provision, which provides that "[y]ou may opt out of [the] Arbitration Provision for all purposes by sending an arbitration opt out notice to WebBank." *Id*. The Borrower Agreement further provides in paragraph 21(c) that "[t]he party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or Judicial Alternatives and Mediation Services ("JAMS"). *Id*. at 8-14. Lastly, paragraph 21(h) of the Borrower Agreement further provides that:

> THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION.  THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

*Id*.

### B. Procedural Background

Plaintiff commenced this putative class action in the Circuit Court for Anne Arundel County on February 21, 2022.  ECF 1-2.  Defendants removed the case to this Court on April 7, 2022.  ECF No. 1.

On July 15, 2022, Defendants filed a motion to compel arbitration and to either dismiss or stay this matter, and a memorandum in support thereof.  ECF Nos. 25 and 26.  Thereafter,

Plaintiff filed a response in opposition to Defendants' motion on August 8, 2022. ECF No. 33. Defendants filed a reply brief on August 22, 2022. ECF No. 34.

Defendants' motion to compel having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g., Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered") (internal citations omitted*); Owen v. CBRE, Inc.*, No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id*.

### B. The Federal Arbitration Act

The FAA "requires [the Court] to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citations omitted). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

§ 2. And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the [C]ourt shall proceed summarily to the trial thereof." *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* at § 3. And so, this Court had recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing). And so, "where

5

the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). In this regard, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[2]

Lastly, the Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).[3] The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has

---

[2] The Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin, 634 F.3d at 266* (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

[3] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway*, 819 F.3d at 84 (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)) (internal quotation marks omitted).

6

elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g., Willcock v. My Goodness! Games, Inc.*, No. 16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Rent-A-Center*, No. 17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017), aff'd, 730 F. App'x 141 (4th Cir. 2018); *Phears v. LVNV Funding, LLC*, No. 20-2843, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

### C.     Applicable Maryland Law

When determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability." *Muriithi*, 712 F.3d at 179 (citations omitted). The Court of Appeals of Maryland has held that, "[t]o be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003) (citations omitted); *see also Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) (binding contracts "must be supported by consideration") (citation omitted). Under Maryland law, "consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" *Cheek*, 835 A.2d at 661 (quoting *Harford Cty. v. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998)). And so, the forbearance to exercise a right or pursue a claim can constitute sufficient consideration to support a contract under Maryland law. *Id*. (citing *Chernick*, 610 A.2d at 774).

### IV.     LEGAL ANALYSIS

Defendants have moved to compel Plaintiff to arbitrate the claims in this action, and to either dismiss or stay this matter, pursuant to the FAA. ECF Nos. 25 and 26. Plaintiff counters that Defendants cannot compel him to arbitrate the claims in this matter, because Defendants are not parties to the Borrower Agreement and Defendants have waived the right to compel arbitration, by previously commencing a debt-collection lawsuit against Plaintiff. ECF No. 33.

For the reasons that follow, a careful reading of the Borrower Agreement shows that the parties have entered into a binding agreement that requires Plaintiff to address his claims in this action through arbitration. And so, for the foregoing reasons, the Court: (1) **GRANTS** Defendants' motion to compel arbitration; and (2) **DISMISSES** the complaint.

A.      **The Parties Have Entered Into A Valid Arbitration Agreement**

As an initial matter, the parties agree that Plaintiff entered into a Borrower Agreement with WebBank. ECF Nos. 26-2 and 33-1. And so, the Court first considers whether this agreement contains a valid and enforceable arbitration agreement. *Murray*, 289 F.3d at 302 (citation omitted) (the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.").

In this regard, paragraph 21(a) of the Borrower Agreement contains an arbitration provision which provides, in relevant part, that:

> Either party to this Agreement, or any *subsequent holder*, may, at its sole election require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 21 (the "Arbitration Provision") . . . As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you . . . on the one hand, and us and/or any subsequent holder . . . . on the other hand, relating to or arising out of this Agreement . . . . The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

ECF No. 26-2 at 7. The Court reads this language to state the parties' intent to arbitrate any "Claim" arising out of the Borrower Agreement.

The Court also reads paragraph 21(a) to broadly define the types of claims covered by the arbitration agreement to "include any past, present, or future claim, dispute, or controversy involving [Plaintiff] . . . and [WebBank] and/or any subsequent holder . . . relating to or arising out of this Agreement. *Id.* And so, as the Borrower Agreement makes clear, "the scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable." *Id.*[4] Given this, the Court agrees with Defendants that Plaintiff's claims in this action are subject to a valid arbitration agreement.

---

[4] The arbitration provision in the Borrower Agreement further provides in paragraph 21(c) that "[t]he party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or Judicial Alternatives and Mediation Services ("JAMS"). ECF No.26-2 at 8. The Court reads this language to incorporate the rules and procedures for conducting arbitrations in accordance with the Judicial Arbitration and Mediation Services, Inc. ("JAMS") and the American Arbitration Association. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 529 (4th Cir. 2017).

### B. UHG Has Shown That It May Enforce The Arbitration Agreement

Plaintiff's argument that the Defendants in this action cannot enforce the arbitration agreement, because they are not parties to the Borrower Agreement, is also unconvincing. As Plaintiff correctly observes, UHG and UHGL are not parties to the Borrower Agreement. ECF No. 33 at 3-4. But Defendants have shown that UHG is a "subsequent holder" under the terms of the Borrower Agreement and that UHG may enforce the right to compel arbitration in paragraph 21.

Defendants have shown that Defendant UHG is a "subsequent holder" under the Borrower Agreement. In this regard, Paragraph 21(a) of the Borrower Agreement makes clear that "[e]ither party to this Agreement, or any *subsequent holder*, may," compel arbitration. ECF No. 26-2 at 7. The Declaration of Clarke Roberts, the Senior Vice President of LendingClub, explains that initially, Plaintiff's Loan was issued by WebBank on August 23, 2018, and LendingClub serviced the loan. ECF No. 26-1 at 2. The Loan was subsequently transferred from WebBank to LendingClub on or about August 17, 2018, and on or about August 27, 2018, LendingClub transferred a fraction of the Loan to LC Trust I. *Id.* at 3. Thereafter, on or about October 23, 2020, LendingClub and LC Trust I transferred the Loan to UHG. *Id*. And so, Defendants have explained the chain of title for Plaintiff's Loan from the date of origination until UHG acquired the Loan in 2020.

Mr. Roberts' Declaration also makes clear that LendingClub was a party to each of the aforementioned loan transfers and that LendingClub can establish the chain of title for the Loan. *See* ECF No. 34 at 4; ECF No. 26-1 at 2-3; ECF No. 26-2 at 2. The Court also observes that the information provided to the Court regarding the transfer of Plaintiff's Loan to UHG is unrebutted by Plaintiff in this action. ECF No. 33. And so, the Court is satisfied that Defendants have shown that UHG is a "subsequent holder" under the Borrower Agreement, with the right to compel arbitration in this matter.

### C. Plaintiff Has Not Shown That UHG Waived The Right To Arbitrate

While a closer question, Plaintiff also has not shown that Defendants waived the right to compel arbitration by previously commencing a debt-collection lawsuit against Plaintiff in state court. ECF No. 33 at 7-9. To waive the right to arbitration, Defendants must: (1) know of an existing right to arbitration; and (2) act inconsistently with that right. *Morgan v. Sundance, Inc.*,

142 S.Ct. 1708 (2022). In this case, it is undisputed that UHG previously commenced a debt-collection action against Plaintiff regarding the Loan in the District Court of Maryland on November 9, 2021. ECF No. 33-1 at 2-4. Given this, the Court agrees with Plaintiff that UHG, as a subsequent holder of the Loan, must have known of its right to arbitration under the Borrower Agreement. *See* ECF No. 26-2 at 8 (stating that the parties acknowledge that they have a right to litigate claims through a court before a judge or jury, but, will not have that right if any party elects arbitration pursuant to this arbitration provision).

The Court does not, however, agree with Plaintiff that UHG acted inconsistently with its right to compel arbitration by commencing its debt-collection action. Under Maryland law, a waiver of a right to arbitrate may result from either an express agreement or be inferred from other circumstances. *Cain v. Midland Funding,* 156 S.3d 807, 815 (Md. 2017). To make such a waiver without an express agreement, the party must act inconsistently with an intent to insist upon enforcing the arbitration agreement. *Id*. And so, to determine whether UHG acted inconsistently with its right to arbitrate here, the Court considers: (1) whether a right to arbitrate the claims that were litigated in state court existed; and (2) whether the claims sought to be compelled to arbitration in this case are "related" to the claims litigated in state court. *Id*. at 815-17.

As discussed above, UHG had the right to arbitrate its debt-collection claims against Plaintiff under the broad arbitration provision in the Borrower Agreement. *See* ECF No. 26-2 at 8. But the FDCPA, MCDCA and MCPA claims in this action are not sufficiently related to the claims in the prior debt-collection to show that UGH waived the right to compel arbitration.

In this case, Plaintiff alleges that Defendants violated the FDCPA, MCDCA and MCPA by engaging in certain illegal debt collection activities, including hiring a third-party debt-collector that placed excessive calls and harassed Plaintiff. ECF No. 1-2. To be clear, these claims do also involve Plaintiff's Loan. But, the claims in this case do not arise from the previous debt-collection litigation brought by UHG.

Rather, the claims in this case arise from alleged improper collection calls and letters that pre-date that litigation. In fact, Plaintiff alleges in the complaint that the illegal debt-collection actions occurred in late August or early September of 2021. ECF No. 1-2 at 5. UHG

10

commenced its debt-collection litigation two months later, on November 9, 2021.  ECF No. 33-1 at 2.

Given this, the Court agrees with Defendants that the factual record indicates that Plaintiff would have brought this action regardless of whether UHG filed the debt-collection suit in state court.  *See* ECF No. 34 at 5-6.  And so, the Court concludes that claims in the two cases are not sufficiently related to show Defendants waived their right to compel arbitration.

### C.      Dismissal Of This Matter Is Appropriate

Because the Court concludes that the arbitration provision in the Borrower Agreement is valid and enforceable under Maryland law, the Court considers as a final matter whether to stay or dismiss this matter.  *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration).  The Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3).  By comparison, the Fourth Circuit has determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l*, 252 F.3d at 709-10.  Because all issues related to Plaintiff's FDCPA, MCDCA and MCPA claims fall within the broad arbitration provision in paragraph 21(a) of the Borrower Agreement, the Court must dismiss the complaint.

### V.      CONCLUSION

In sum, a careful reading of the Borrower Agreement shows that the parties have entered into a binding agreement that requires Plaintiff to address his claims in this action through arbitration.  And so, for the foregoing reasons, the Court:

1. **GRANTS** Defendants' motion to compel arbitration; and
2. **DISMISSES** the complaint.

Judgment shall be entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

                                              s/Lydia Kay Griggsby
                                              LYDIA KAY GRIGGSBY
                                              United States District Judge